McCONNELL, Respondent, v. JOHNSON, et al, Respondents, INTER-STATE SURETY COMPANY, Appellants.

(221 N. W. 255.)

(File No. 6486. Opinion filed October 6, 1928.)

*Sterling, Clark & Grigsby,* of Redfield, for Appellants.

*C. J. Crandall,* of Onida, and *Fuller & Robinson,* of Pierre, for Respondents.

BROWN, J. This is an action to determine adverse claims to lots 17-32, inclusive, of block 36 in the First addition to the city of Onida, S. D. Plaintiff claims title as owner, and in conjunction with the intervener, Kittie McConnell, claims that the premises constitute the family homestead. Defendants Stringer, Johnson, and Hart, who were directors of the First National Bank of Onida, claim a lien on the premises for sums advanced by them to take up poor notes held by the bank, and the Inter-State Surety Company claims a lien on the premises under a deed given to it as security for its becoming surety on a bond of the bank to secure public deposits. The trial court found in favor of the homestead claim

and of the lien of the directors Johnson, Hart, Stringer, Quade, and Van Ludwig, and that defendants First National Bank and Inter-State Surety Company had no right, title, or interest in the lots or any part thereof and the deeds to them were canceled and adjudged of no effect. From the judgment and an order denying a new trial, Inter-State Surety Company appeals.

In December, 1922, and for some time prior thereto plaintiff was president and had active management of the bank and was principally responsible for the poor paper in the bank, which aggregated about $32,000. In an effort to raise money to retire some of this paper he procured Johnson to sign a note for $10,000, and to secure him for so doing plaintiff and his wife, the intervener, gave him a deed to the premises in which the grantee was left blank. Plaintiff was unable to negotiate this note, so the deed to Johnson was entirely without consideration. On December 19, 1922, an agreement was made between plaintiff and the directors whereby plaintiff turned over to the directors all of the bank stock held and controlled by him, aggregating 125 shares of the book value of $110 a share, and the directors had the privilege of buying or selling the stock and applying the proceeds to take up the poor paper. By the same agreement plaintiff agreed to give the directors a warranty deed to the premises in controversy, to be held until the depreciated notes were liquidated to the satisfaction of the directors, whereupon the house and lots were to be reconveyed to plaintiff by warranty deed. Instead of plaintiff making a deed to the directors, the deed already made to Johnson was produced at this time and Johnson's name inserted as grantee and he was orally authorized by plaintiff to deed to the directors. Johnson on March 12, 1923, executed a deed not to the directors but to the bank, in which the consideration was stated to be "$1.00 and no more" and the deed also contained this recital: "There being no valuable consideration, no stamps required."

Inter-State Surety Company was surety on a bond given by the bank to secure a deposit of public funds, the term of which bond was about to expire, and to secure the surety company for continuing the bond the bank deeded the premises in controversy, with other property, to the surety company. This deed was executed on behalf of the bank by B. M. Hart, president, and J. L. Tomlinson, seretary, and without the knowledge or consent of the

board of directors or of either of the McConnells. Tomlinson testified that during negotiations with the surety company, before the execution of this deed, he had a conversation with H. R. Wood, manager of the surety company, in which he stated to him that the bank held the Johnson deed as security for the worthless notes hereinbefore referred to, and that before sending its deed to the surety company he had written the company a letter inclosing a statement of the bank's condition, showing that about $17,000 of the worthless paper had been taken out. This reduction of the worthless assets was accomplished by the directors Johnson, Hart, and Stringer and two others who are not parties to this action, Van Ludwig, and Quade, each putting into the assets of the bank the sum of $5,000, $25,000 in all, in cash to replace depreciated notes, and these five, pursuant to the agreement between plaintiff and the directors authorizing the directors to buy plaintiff's stock, assigned to themselves McConnell's stock to the amount of $2,000 par value each.

 The several assignments of error culminate in the single contention that the evidence is insufficient to justify the decision. The intervener testified that at the time of the execution of the deed by her in which the grantee was blank she understood it was for the purpose of securing the bank in some way; that she never gave her authority for the insertion of the name of any grantee and had no knowledge of the insertion of Johnson's name in the deed or of his deed to the bank or of the deed of the bank to the Inter-State Surety Company; that the premises were the family homestead at the time she signed the blank deed, and had been for a number of years prior thereto; that the deed was signed when she was about to leave for California with one of the children who was ill; that she left him in California and returned about the last of October and lived in the family home until August, 1923, when she again went to California to be with her son, but that her intention was to return to Onida and live there as soon as her son's health permitted; that they had no other homestead or place of residence; that when she rented the house when she left Onida she reserved furnished rooms for their use when she should return. This evidence is uncontroverted, and we think the finding of the court that the premises were the family homestead at all times material to the action is justified by the evidence.

 Appellant contends that while the filling in of Johnson's name as grantee in the blank deed without authority in writing may have been insufficient to constitute a good conveyance between the McConnells and Johnson, yet when appellant took its deed from the bank, relying on the apparent title of Johnson and the bank, derived through the deed of the McConnells to Johnson, the McConnells are estopped as against appellant from claiming that their deed did not convey the title.

In addition to the fact that the deed from the McConnells contained no grantee and that no written authority was ever given to fill in any name as grantee, it is undisputed that that deed was never intended to convey title to any one, but was only given to be held by the directors of the bank as security for such sums as they might pay into the bank to retire bad assets of the bank. Johnson was a director of the bank, and his name was inserted as grantee in the McConnell deed with the knowledge of the other directors and the managing officers of the bank, and the deed from him to the bank was taken with knowledge on the part of the bank that it was to be held only for the purpose we have stated. Appellant contends that its deed from the bank was taken without any notice or knowledge on its part that the bank held the title only as security, but Tomlinson, who was cashier of the bank from October, 1922, until it closed in February, 1924, testified that on February 3, 1923, about five weeks before appellant took its deed and while negotiations between the bank and appellant were going on for the extension of the surety bond, he had a conversation with Mr. Wood, the manager of the surety company, in which he told him that the deed from the McConnells to Johnson was given to be held as security for the notes that were to be charged off out of bank assets, and appellant before receiving the deed had been supplied with an abstract of title to the premises which was submitted to its attorneys for examination. This abstract showed that the deed from Johnson and wife to the bank stated the consideration as "$1.00 and no more," and contained the recital: "There being no valuable consideration, no stamps required." We think this recital that there was no consideration for the deed was sufficient to put appellant on inquiry as to the purpose for which the deed was given, and that had inquiry been made of Johnson, appellant would have learned that the deed was not given to the bank with the in-

tention of transferring an absolute title, but that on the contrary the bank was simply holding the deed on behalf of its directors as security for the money they had advanced or put into the bank to retire the depreciated notes. 39 Cyc. 1718. Lawley v. Hickenlooper, 61 Utah, 298, 212 Pac. 526.

We think the decision of the court is sustained by the evidence, and the judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, J., concur.

CAMPBELL, J., concurs in result.

SHERWOOD, J., disqualified and not sitting.